UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 24-CR-384 (CKK) |
| v. : | |
| : | |
| MATTHEW ALLEN, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Matthew Allen has pleaded guilty to two Class B misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Allen to 30 days' incarceration on Count Three and 36 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

I.   **Introduction**

Defendant Matthew Allen, a 44-year-old truck mechanic and army veteran from Castle, Oklahoma participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count,

1

threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Allen pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) and (G). The government's recommendation is supported by Allen: (1) staying inside the building for nearly 45 minutes; (2) ignoring officer's commands to exit the building; (3) filming the riot on his Go Pro video camera; and (4) only exiting the building once officers pushed him out.

The Court must also consider that Allen's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Allen's crime support a sentence of 30 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution in this case.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary repetition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 19 at 1-4.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

*Defendant Allen's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Allen traveled from his home in Castle, Oklahoma to Washington D.C. with his wife to attend the "Stop the Steal" rally. When he arrived in D.C., Allen and his wife went to the Ellipse and later followed the crowd to the U.S. Capitol where he participated in the riot there.[2]

Once on restricted grounds, Allen shot video using his Go Pro camera as he traveled towards the Capitol Building. *See* Image 1. At approximately 2:45 p.m., Allen entered the U.S. Capitol building through the Upper West Terrace Door as alarms were ringing. *See* Image 2.



*Image 1 – Still Image from Open Source Video of Allen on Capitol Grounds Filming With a Go Pro*

---

[2] Before entering the building, Allen became separated from his wife. At the time of this filing, Allen's wife has not been charged in relation to the riots that occurred at the U.S. Capitol on January 6.



*Image 2 – Still Image from CCTV of Allen Entering the Capitol Through the Upper West Terrace Door at Approximately 2:45 p.m. (Exhibit 2 at 05:51).[3]*

After entering the building, Allen encountered police officers in a stairway and they instructed him to leave. Allen left the area, but instead of leaving the building as instructed, he walked to the Rotunda and continued to film the chaos around him. *See* Images 3-4.



*Image 3 – Still Image of Allen in the Rotunda*   *Image 4 – Still Image of Allen in the Rotunda (Exhibit 4 at 0:08)[4]*

---

[3] This still image is from Capitol Surveillance Footage attached as Exhibit 2.
[4] This still image is from Open-Source Video attached as Exhibit 4.

While inside the Rotunda, Allen encountered police officers who were attempting to clear rioters out of the area. Between approximately 2:57 p.m. to 3:19 p.m., Allen shot video of officers as they continued their efforts to clear rioters from the area. After nearly 25 minutes, Allen left the Rotunda only when officers physically pushed him out of the room. *See* Images 5-6. Ten minutes later, at approximately 3:29 p.m., Allen exited the building through the Memorial Doors. *See* Image 7.



*Image 5 – Still Image from a Police Officer's Body Worn Camera Video, Showing Allen Shooting Video of Officers Inside the Rotunda (Exhibit 5 at 08:53)[5]*



*Image 6 – Still Shot from Body Worn Camera Video Showing Officers Pushing Allen Out of the Rotunda (Exhibit 6 at 22:47)[6]*

---

[5] This still image is from body worn camera and attached as Exhibit 5.
[6] This still image is from body worn camera and is attached at Exhibit 6.

5



*Image 7 – Still Shot from CCTV Video Showing Allen Exiting the Building at Approximately 3:29 p.m. Through the Memorial Door (Exhibit 7 at 04:53)*[7]

*FBI Interview of Allen*

In November 2022, Allen was interviewed by the FBI, where he admitted to going inside the building and encountering police inside the building. He admitted that when he first entered the building, he was told by the police not to go further inside the building. He admitted to being inside the Rotunda and stated he was pushed out the building by police. When asked about the Go Pro, he said he had borrowed it from his son and no longer has the device.

In October 2024, Allen wrote a statement that he provided to the Probation Office taking responsibility for his actions and expressing remorse. PSR ¶ 26.

*The Charges and Plea Agreement*

On August 22, 2024, the United States charged Allen by a four-count Information with violating 18 U.S.C. § 1752(a)(1) and (a)(2) and 40 U.S.C. § 5104(e)(2)(D) and (2)(G). On April 22, 2024, pursuant to a plea agreement, Allen pleaded guilty to the § 5104 counts. By plea agreement, Allen agreed to pay $500 in restitution to the Architect of the Capitol.

---

[7] This still image is from Capitol surveillance footage and is attached as Exhibit 7.

### III. Statutory Penalties

Allen now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (2)(G). As noted by the plea agreement and the U.S. Probation Office, Allen faces up to six months of imprisonment and a fine of up to $5,000. Allen must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. As described below, the Section 3553(a) factors weigh in favor of a sentence of 30 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Allen's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Allen, the absence of violent or destructive acts is not a mitigating factor. Had Allen engaged in such conduct, he would have faced additional criminal charges.

The most aggravating factor in this case is Allen's blatant disregard of the police officers and the chaos around him. For nearly 45 minutes, Allen stayed inside the building after hearing alarms and being told by police officers to leave. Allen then filmed officers as they attempted to remove rioters from the building and only left once police physically pushed him out. He admitted that he knew he should not have gone inside the building and was told to leave, but ignored those commands. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 30 days' incarceration in this matter.

### B. Allen's History and Characteristics

As set forth in the PSR, Allen does not have a criminal history and he has been compliant with the conditions of his pretrial release. ECF No. 47 at ¶¶ 11, 28-33. The PSR states that he has undergone multiple surgeries in the past and suffers from migraine headaches but does not have any substance abuse or mental illness. Id. at ¶¶ 49-56. Prior to January 6, Allen served in the U.S. Army from the age of 18 to 21 years old, including a six-month tour in Afghanistan. He was honorable discharged. *Id*. at ¶¶ 62-65. Allen is married and has eight children. *Id.* at ¶ 44. Allen currently works as a lead service advisor at a long-haul truck dealer. *Id*. at ¶ 66. His love of his multiple children and of his country (*id.* at ¶ 48) did not deter him from engaging in a riot to disrupt what was supposed to be a peaceful transition of power.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on

8

our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration.

Allen's actions on January 6, 2021, indicate the need for a sentence that provides specific deterrence. Allen did not accept the results of the 2020 presidential election, so on January 6 he went to Washington D.C., invaded the Capitol, filmed the chaos, and stayed in an area where police

officers were trying to clear—only leaving once forced out. Allen admitted to this conduct prior to being arrested, accepted responsibility, and expressed remorse during his presentencing interview with the Probation Office. Although that was mitigating, his behavior on January 6 shows a willful and alarming disregard of the chaos and violence that surrounded him. Allen's actions on January 6 makes it clear that a sentence involving incarceration is needed to successfully deter Allen from such thoughtless behavior in the future.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[8] This Court must sentence Allen based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Even though the Sentencing Guidelines do not apply in this case, the sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating

---

[8] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. William Vogel*, 21-cr-56 (CKK), the defendant pled guilty to a different class B misdemeanor. But like Allen, Vogel avoided clear signs to not enter the Capitol building, remained inside the building despite being instructed to leave, was escorted out of the building by police, and filmed his time inside the building and on the grounds. The court sentenced Vogel to 30 days' incarceration. Although no case is exactly the same, the similar aggravating factors among these two cases warrants a similar sentence in this case.

In *United States v. John Mott*, 21-cr-464 (RCL), the defendant pled guilty to violating 40 U.S.C. § 5104(e)(2)(G). Like Allen, Mott observed chaos before entering the Capitol building and encountered officers in close time and proximity to where he entered. Instead of leaving, Mott went inside the Rotunda and began to film on his phone. Also like Allen, Mott encountered police trying to clear the Rotunda area, stayed inside, and resisted officers attempts to push rioters out of the area. The court imposed a sentence of 30 days' incarceration in that case. Mott had an additional encounter with an officer where he pushed against an officer's baton, but Allen's time inside the Capitol of 45 minutes was significantly longer than that of Mott (17 minutes). Balancing the aggravating factors and mitigating factors in Allen's case, 30 days' incarceration is warranted.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its

11

own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

### V.     Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[9] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Allen must pay $500 in restitution, which reflects in part the

---

[9] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

role Allen played in the riot on January 6.[10] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Allen's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 94.

## VI.   Fine

Allen's convictions for violations of 40 U.S.C. § 5104(e)(2)(D) and (2)(G) subject him to a statutory maximum fine of $5000. S*ee* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines provide for a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a), (e) (2023).

The burden is on Allen to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

---

[10] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

Here, the PSR indicates that Allen has the ability to a pay a fine up to the statutory maximum amount. *See* PSR ¶ 74. Thus, pursuant to the considerations outlined in U.S.S.G. § 5E1.2(d), the Court has authority to impose a fine. § 5E1.2(a), (e).

## VII. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Allen to 30 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution.

Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Allen's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

BY: /s/ Nialah S. Ferrer
Nialah S. Ferrer
Assistant United States Attorney
New York Bar No. 5748462
601 D Street, NW
Washington, D.C. 20530
(202) 557-1490
Nialah.Ferrer@usdoj.gov